## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

**DEBORAH LAUFER,**
             **Plaintiff,**

**v.**                                          **Case No: 3:20-cv-00616-slc**

**PRAMUKH LLC,**
             **Defendant.**


### PLAINTIFF'S MEMORANDUM IN RESPONSE TO ORDER

Attorneys For Plaintiff
Tristan W. Gillespie and
Thomas B. Bacon,
Thomas B. Bacon, P.A.
644 N. McDonald Street
Mount Dora, FL 32757
tbb@thomasbaconlaw.com
954-478-7811

## I.       Introduction

Plaintiff, is a Florida resident and disabled person within the meaning of the Americans With Disabilities Act, 42 U.S.C. Sections 12181, et seq. ("ADA"), and relies on a wheelchair or cane to ambulate and is vision impaired. Defendant books rooms for its hotel through an online online reservations service operated through multiple websites.  (Hereinafter "websites", "online reservations systems" or "ORS".) Laufer Affid., para. 6, Exhibit A attached hereto.  The purpose of this ORS is so that Defendant can reach out and market to persons all over the country, including Florida,  in their own homes,  to solicit their patronage, provide them with information so that they can make a meaningful choice in planning trips, and, in some instances, book a room at the hotel.  As such, the Defendant's ORS is required to comply with the requirements of 28 C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), by identifying and allowing for booking of accessible rooms and providing accurate and sufficient information as to whether all the features at the hotel are accessible. Prior to the filing of this lawsuit, Plaintiff reviewed the ORS for Defendant's hotel on multiple occasions and found that it did not comply with the Regulation. Laufer Affid., para. 6. Plaintiff therefore filed the instant action for injunctive relief pursuant to the ADA. Plaintiff has a system to ensure that she revisits the ORS of every hotel she has sued. *Id*. at. 8.  Pursuant to that system, she revisits the ORS of every hotel approximately 30 days after a suit has been filed. Once it is established when a hotel's ORS must become compliant, whether by court order or by agreement, she records the date and revisits the ORS on that date. *Id.*

Although Plaintiff's complaint alleges that she is a tester, Plaintiff also intends to visit and travel throughout the entire State of Wisconsin as soon as the Covid travel restrictions are lifted. *Id*. at 5. In this respect, unless hotel online reservations systems are compliant, she is

deprived the information she requires to make a meaningful choice in selecting hotels and making her plans.

In this and other cases, the Magistrate Judge issued an order for the Plaintiff to explain her standing in light of *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830 (7th Cir. 2019); *Lujan v. Defenders Of Wildlife*, 504 U.S. 555 (1992) and *Harty v. Greenwich Hospitality Group, LLC*, 536 Fed. Appx. 154 (2nd Cir. 2013).  In short, this Court requires a memorandum regarding whether Plaintiff suffered a cognizable injury and has standing in light of the distance between her home and the subject hotels located in Wisconsin.

## II.    Standard

Under Fed. R. Civ. P. 12(b)(6), the Court must accept "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *RLJ Lodging Trust v. Nat'l Ret. Fund*, 2018 U.S. Dist. LEXIS 143911, *9 (N.D. Ill. 2018). When ruling on a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), a district court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894. 897 (N.D. Ill. 1995). 12(b)(1) motions are not meant to decide the merits of the case. *PrimeSource Healthcare of Ohio, Inc. v. Sebelius*, 2014 U.S. Dist. LEXIS 93293, *7  (N.D. Ill. 2014); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). A court can transform a motion for dismissal into one for summary judgment, when matters outside the pleading are presented. *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993).  If a court is going to disbelieve the plaintiff on the issue of standing, it cannot be in the context of a rule 12(b)(1) motion, but must be pursuant to the factfinding process. *Brooke v. Kashl Corp.*, 362 F. Supp.3d 864, 876  (S.D.Ca. 2019).

2

III.     **The Pleadings Are Sufficient**

Many courts have upheld the sufficiency of virtually identical pleadings and have rejected challenges against their sufficiency. See, e.g., *Kennedy v. New Yorker Hotel Miami, LLC*, 18-62897, DE 34 (S.D. Fla. 6/6/19); *Kennedy v. Patel Brothers, Inc.*, 19-60613, DE 23 (S.D. Fla. 6/6/19);  *Kennedy v. Guru Krupa, Inc.*, 0:18-cv-63088-WPD, DE 18 (S.D. Fla. 2/26/19)(denying motion to dismiss); and *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19)(denying motion to dismiss); *Parks v. Richard*, 2020 U.S. Dist. Lexis 86790 (M.D. Fla. 2020)(holding virtually identical pleadings to be sufficient).

Numerous courts have also considered such allegations as sufficient when they granted default judgment. See *Kennedy v. Yaish & Tish Ltd., LLC*, 19-cv-61992-RAR, DE 14 (S.D. Fla. 9/27/19);   *Kennedy v. Londamerican Real Estate Ltd.*, 19-cv-61228-SMITH/VALLE, DE 18 (S.D. Fla. 8/21/2019); *Kennedy v. Guruhari Hospitality*, LLC, 0:19-cv-61139-WPD, DE 18 (S.D. Fla. 7/11/2019); *Kennedy v. Moreno*, 19-60550-CIV-ALTMAN, DE 20, (S.D. Fla. 6/26/2019); *Kennedy v. Pacifica Tampa Ltd Partnership*, 5:17-cv-442-JSM-PRL, DE 7 (M.D. Fla. 1/25/18). *Kennedy v. Fernandez*, 19-60876, DE 18 (S.D. Fla. 6/11/2019);  *Kennedy v. Astoria Hotel Suites, LLC*, 19-cv-60160, DE 17 (S.D. Fla. 3/22/19); *Kennedy v. Dockside View, LLC*, 2:18-cv-14444-KAM (S.D. Fla. 1/19/19); *Kennedy v. Cape Siesta Motel, LLC*, 18-81811, 0:18-cv-61811-MGC, DE 20 (S.D. Fla. 1/18/2019); *Kennedy v. Shivnit, Inc.*, 0:18-cv-63094-UU, DE 12 (S.D. Fla. 1/30/19); *Kennedy v. Terrace Park Suites, LLC*, 0:19-cv-60012-DPG (S.D. Fla. 3/21/19); *Kennedy v. Shree Ram Jalaram, Inc.*, 19-60708, DE 13 (S.D. Fla. 4/18/2019); and *Kennedy v. Rushi Hospitality LLC*, 18-cv-62259-WPD, DE 26 (S.D. Fla. 2/6/19).

Initial pleadings in Title III ADA actions are governed by the liberal pleading

requirements of Fed. R. Civ. P. 8(a). This Rule requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

It is therefore unnecessary that Plaintiff allege in her pleadings her reason for reviewing Defendant's discriminatory online reservations system. Plaintiff's complaint sets forth a complete cause of action based on the fact that she sustained cognizable injury when she encountered the respective Defendants' discriminatory ORS, and the imposition of any additional requirement regarding her intent is improper either as a pleading requirement or otherwise. However, out of an abundance of caution, Plaintiff is simultaneously herewith submitting an affidavit, explaining her system of reviewing websites and of ensuring that she revisits hotel websites after a suit has been filed.

## IV.    Case Authorities Are Overwhelming In Favor Of Standing

Despite two similar court rulings requiring that Laufer submit a brief on standing, and despite dozens of motions to dismiss filed against her challenging her standing, no court has ever ruled that Laufer lacks standing. Indeed, the overwhelming majority of cases ruling on this matter have recognized standing under identical circumstances.

First, there is a significant difference between ADA cases involving discrimination encountered when reviewing a discriminatory website and those involving discrimination which only occurs when the plaintiff visits the physical property. *Harty v. Greenwich Hospitality Group, LLC*, 536 Fed. Appx. 154 (2nd Cir. 2013), is entirely irrelevant because the injury suffered in *Harty* only occurred when the plaintiff visited the physical hotel and could only recur when the

4

plaintiff visited the physical hotel again. By contrast, website discrimination is encountered when the plaintiff reviews the discriminatory website in his or her own home. At least one court has expressly rejected the applicability of *Harty* for this precise reason. See  *Camacho v. Vanderbilt University,* 2019 WL 6528974 at p. 11, 2019 U.S. Dist. Lexis 209202 (S.D.N.Y. 2019).

     *Carello v. Aurora Policemen Credit Union*, 930 F. 3d 830 (7th Cir. 2019) , actually supports Plaintiff's standing claim. *Carello* involved a credit union that only served a closed group, from  which the plaintiff was legally barred and to which he could never become a member. *Id.* at 832, 833. Indeed, the *Carello* Court expressly confined its holding as being no broader than that set forth in an identical case: *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649 (4th Cir. 2019). *Griffin* confined its holding to whether " this plaintiff who is barred by law from making use of defendant's services may sue under the ADA for an allegedly deficient website", and  expressly stated that it was not considering " the rights generally of people with disabilities to sue for Internet-based harms under the ADA..." *Id*. at 652, 653.

     Significantly, the *Carello* Court distinguished itself from the sorts of websites applicable to the case at bar, stating: "Carello does not complain that the Credit **Union withheld information**...."  *Id*. at 835 (emphasis added). Thus, the *Carello* Court expressly distinguished the statute at issue therein with the type of statute and regulation at issue herein - which prohibit the withholding of information. Indeed, the *Carello* Court recognized that informational injury is actionable when the defendant fails to provide information to a plaintiff that a law entitles him to obtain and review for some substantive purpose. *Id*. at 835. "Once that occurs, there is no additional requirement that the plaintiff suffer any additional harm beyond his or her failure to receive the information that the law renders subject to disclosure. *Id*., citing *Spokeo, Inc. v.*

5

*Robins*, 136 S. Ct. 1540 (2016). Specifically, the Carello Court stated:

> An informational injury occurs when the defendant refuses to provide the plaintiff with information that a law—typically, a sunshine law—entitles him to obtain and review for some substantive purpose. See, e.g., *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21, 24-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (concluding that voters' inability to obtain information subject to disclosure under the Federal Election Campaign Act of 1971 is a sufficiently concrete injury); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) (explaining that, to satisfy Article III's injury requirement, advocacy organizations requesting information subject to disclosure under the Federal Advisory Committee Act need only show "that they sought and were denied" the information); *Casillas [v. Madison Ave., Assoc.*, 926 F.3d 329,] 337-38 [(7th Cir. 2019)] ("[Akins and Public Citizen] hold that the denial of information subject to public disclosure is one of the intangible harms that Congress has the power to make legally cognizable." (emphasis omitted)). In such cases, a plaintiff "need not allege any additional harm beyond" his failure to receive information that the law renders subject to disclosure. *Spokeo*, 136 S. Ct. at 1549.

In this regard, *Carello* squarely establishes that this Court must recognize Plaintiff's right to sue. The Regulation was promulgated for the purpose of providing a right of this plaintiff and other disabled persons to the right to book a room and further requiring the provision of specific information regarding accessibility at a hotel.

Although this Plaintiff intends to visit Wisconsin, stay in hotels, and is injured because the failure of the Defendant's hotel to comply with the Regulation deprives her of the information she needs to plan her trip, none of this is required. In other words, the Plaintiff's encounter with the discriminatory information is sufficient and constitutes injury and courts have rejected any requirement that the plaintiff additionally intend to book a room or visit the hotel. In *Parks v. Richard*, 2020 U.S. Dist. Lexis 86790 (M.D. Fla. 2020), one court rejected the defendant's argument that the plaintiff needed to intend to book a room at the hotel. (Hereinafter sometimes referenced as "physical nexus" argument or requirement). The court held that the:

> ADA claim is based upon [defendant's] website failing to identify the accessible features

6

of the motel and its rooms, in violation of 28 C.F.R. § 36.302(e)(1)(ii). Therefore, the
relevant 'future injury' inquiry relates to the motel's website and reservation system, rather
than the motel's physical property." [Citation omitted.] While Parks may have never
visited the motel, he visited its website and several third-party sites.

*Id*. at *7.  In *Kennedy v. Gold Sun Hospitality, LLC*, 8:18-cv-842-T-33CPT, DE 23, at pp.  30-31,

(M.D. Fla. June 18, 2018), another court rejected a physical nexus argument, holding that the

plaintiff's injury occurred in comfort of her own home when she visited defendant's

discriminatory hotel website. In *Kennedy v. Swagath Hospitality, LLC*, 0:19-cv-60583-DPG, DE

27 (S.D. Fla. 1/2/2020), another court rejected the defendant's  physical nexus argument, stating:

> Plaintiff alleges that (1) she visited Defendant's website to ascertain whether it met the
> requirements of 28 C.F.R. Section 36.302(e), (2) she intends to return to the website to
> test it for compliance and/or to reserve a guest room, and (3) Defendant's failure to
> comply with the Americans with Disabilities Act ("ADA") is ongoing and harmful to
> her..... Based on these allegations, the Court finds that Plaintiff has sufficiently alleged an
> injury-in-fact and an intent to the return to the website in the future.

In *Kennedy v. WGA*, 2:19-cv-0095-RWS, DE 16, p. 9 (N.D. Ga. 11/5/2019), another court

rejected a defendant's physical nexus argument (filed at DE 5). The court stated: "[Defendant]'s

argument [] centers on whether [plaintiff] suffered a concrete and particularized injury only from

visiting [the hotel's] website and not the physical premises. DE 16, at pp. 7-8. The court held

that: "visiting the website suffices" and that "a plaintiff's inability to fully and effectively use an

establishment's website constitutes an injury-in-fact." *Id*. at 9. See also *Poschmann v. Fountain*

*TN, LLC*, 2019 U.S. Dist. Lexis 159417, **4-6 (M.D. Fla. 2019)(holding that the plaintiff's ADA

claim was based on the discriminatory website and, "[t]herefore, the relevant "future injury"

inquiry relates to the motel's website and reservation system, rather than the motel's physical

property." );  *Poschmann v. Coral Reef of Key Biscayne Developers, Inc*., 2018 U.S. Dist. Lexis

87457. *8 (S.D. Fla. 2018)(proper motive for returning to discriminatory website is either "to

7

determine whether the Hotel is accessible to him, and, if so, to reserve a room at the Hotel **or** to test the Hotel's Website reservation system for its compliance with the ADA."); *Kennedy v. Nila Investments, LLC*, 2:19-cv-90-LGW-BWC, DE 34. p.5  (S.D. Ga. 7/1/20)(after an evidentiary hearing, finding that the plaintiff suffered discrimination when she visited the non-compliant ORS  "for the purpose of assessing the accessibility features of the property and to ascertain whether those sites met her accessibility needs as well as the requirements of 28 C.F.R. § 36.302(e)(1)." Other courts rejected the defendants' arguments that intent to book a room or visit the hotel was required.  See *Kennedy v. New Yorker Hotel, Miami, LLC*, 0:18-cv-62897-WPD, DE 34 (6/6/19);  *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19); *Kennedy v. Galleon Resort Condominium Assn, Inc., et al.*, 19-cv-62421-CMA, DE 52 (S.D. Fla. 1/28/20); *Kennedy v. Italia, LLC*, 0:19-cv-61938-MGC, DE 35 (S.D. Fla. 8/10/20)(rejecting physical nexus argument made at DE 17).

Numerous other courts have held that a disabled person suffers injury-in-fact when they visit a hotel's discriminatory online reservations system. See  *Kennedy v. Sai Ram Hotels, LLC*, 2019 U.S. Dist. LEXIS 80111, *4-6 (M.D. Fla. 5/13/19), citing *Honeywell v. Harihar Inc.*, 2018 U.S. Dist. LEXIS 203740,(M.D. Fla. Dec. 3, 2018); *Kennedy v. Floridian Hotel, Inc.*,  2018 U.S. Dist. LEXIS 207984, at *9 (S.D. Fla. 2018);  *Poschmann v. Liberty Inn Motel, LLC*, 2:18-cv-14348, ECF No. 17 at 4-5 (S.D. Fla. Jan. 23, 2019); *Brooke v. Hotel Inv. Grp., Inc.*, 2017 U.S. Dist Lexis 150717, * 6 (D. Ariz. 2017);  *Brooke v. Regency Inn-Downey, LLC*, 2017 U.S. Dist. Lexis 150716 (D. Ariz. 2017). This injury occurs in the comfort of the plaintiff's own home. *Gold Sun,* at pp.  30-31 (plaintiff's injury occurred in comfort of her own home when she visited defendant's discriminatory hotel website).  Additional cases support the proposition that

viewing a discriminatory commercial website constitutes injury-in-fact in the context of vision impairment based claims. See, e.g. *Carroll v. Fedfinancial Fed. Credit Union*, 324 F. Supp. 3d 658, 664 (E.D. Va. 2018); *Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287, 294 (D. Mass. 2017); *Jones v. Piedmont Plus Fed. Credit Union*, No. 1:17-CV-5214- RWS, 2018 WL 4694362, at *1 (N.D. Ga. Sept. 26, 2018); *Jones v. Family First Credit Union,* No. 1:17-CV-4592-SCJ, 2018 WL 5045231, at *4 (N.D. Ga. Aug. 6, 2018). For example, in *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. Lexis 209202, *30 (S.D.N.Y. 2019), one court rejected the notion that the plaintiff's possible visit to the subject property was at issue, holding:

> Plaintiff has claimed that he was denied access to the Website, not Defendant's physical location itself. Thus, Defendant need not have shown that he intended to "return" to Defendant's school in Nashville, Tennessee. He is only required to have established a reasonable inference that he intended to return to the Website...

In *Camacho*, the defendant had challenged plaintiff's intent on the basis that he had filed 50 similar complaints regarding the websites of schools all over the country. 2019 U.S. Dist. Lexis 209202, at *29. The court addressed this argument as follows:

> Defendant notes that Plaintiff's allegation that he "intends to visit Defendant's school in the near future  if he could visit their website" is present in many, if not all, of the other complaints. []. From this, Defendant urges the Court to intuit that this allegation, as it appears in the Second Amended Complaint, should be discredited.[]. If Plaintiff were to visit each of the schools named in those complaints, he would be forced to travel to 42 cities across 19 states. []. Doubting the feasibility of such an expansive college tour, Defendant argues that the Second Amended Complaint does not adequately plead an intent to visit Defendant's school, and thus has not alleged facts that make it "reasonable to infer that Plaintiff's expressed intent to return to the Property is likely to materialize into fact sometime in the future." []
> Defendant's argument, built around citations to cases involving ADA claims relating to access to physical locations, misses the mark. Plaintiff has claimed that he was denied access to the Website, not Defendant's physical location itself. Thus, Defendant [sic] need not have shown that he intended to "return" to Defendant's school in Nashville, Tennessee. He is only required to have established a reasonable inference that he intended to return to the Website, and the Court has found that this requirement is met. To the

9

extent it is relevant, Plaintiff has also clarified that he does not intend to visit each of the schools against which he has filed complaints. [] Rather, he wishes to visit each of the schools' websites, learn more about them, and then make an informed choice regarding which schools it would be worth visiting in person.[]. The Court does not doubt that it would be plausible for Plaintiff to visit the websites of all 50 schools, if they were accessible.

*Id*. at. ** 29-31. Thus, regardless of whether or not the plaintiff intends to visit the subject

property, the real issue is whether or not the plaintiff intends to visit the website.

## V.      The Rules Of Statutory Construction Prohibit The Imposition Of A Physical Nexus Requirement

The rules of statutory construction require a finding that the plaintiff has suffered

actionable injury by encountering a non-compliant ORS and the imposition of any additional

requirements is improper.

Plaintiff's claims are based on the following: 42 U.S.C. Section 12182(a) provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation....

42 U.S.C. Section 12182(b)(2)(A) expands on the definitions of the above subsection to include:

a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities,...

42 U.S.C. Section 12182(b)(2)(A)(ii).  This latter subsection is the subject of regulations

promulgated by the Department Of Justice ("DOJ").[1] Specifically, the DOJ promulgated  28

---

[1]The DOJ promulgated 28 C.F.R. 36.302 to carry out the provisions of the ADA. *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457 *6 (S.D. Fla. May 23, 2018). In one case involving the Regulation, one Court stated: "[b]ecause Congress explicitly authorized the Attorney General to promulgate regulations under the ADA, the regulations must be given legislative and, hence, controlling weight unless they are arbitrary, capricious or plainly contrary to Statute." *Kennedy v. Gold Sun Hospitality, LLC,* 8:18-cv-842, DE 23,  Hearing Transcript at 29-30 (M.D. Fla. 6/18/18). A regulation promulgated pursuant to

C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), which provides:

> (1)Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party -
> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs; ....

Statutory interpretation always begins with the "plain language of the statute". *Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009). When the statutory language is plain, it must be enforced according to its terms. *Id*.  See also  *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 192 (7th Cir. 1993)(same). "We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable. Instead we must give effect to the text Congress enacted....". *Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008)*.  A court may not read words or elements into a statute that do not appear on its face, including a requirement regarding intent.  See *Bates v. United States*, 522 U.S. 23, 29 (1997)(intent to defraud requirement cannot be judicially added). A court is "not allowed to add or subtract words from a statute." *Houston v. Marod Supermarkets, Inc.,* 733 .3d 1323, 1333-34 (11th Cir. 2013). More significantly, if such additional restrictive language is found elsewhere in the Statute, but not in the provisions governing the case at bar, such exclusion is dispositive.

> "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

---

Congressional authority must be given controlling weight. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984).

*INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987).  The Statute and Regulation are directly on point and unambiguously spell out all the elements of a cause of action. The plaintiff's right to injunctive relief is accorded by 42 U.S.C. Section 12188(a), which provides that: "The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to **any person who is being subjected to discrimination** on the basis of disability in violation of this subchapter..." (Emphasis added.)  A disabled person who encounters a non-compliant ORS becomes entitled to relief under this provision pursuant to two different subsections "of this subchapter". First, 42 U.S.C. Section 12182(a) clearly spells out a complete cause of action as follows: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the ... services ... of any place of public accommodation..."  A commercial website is a "service" of a place of public accommodation. *Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018)(unpublished opinion)(describing a commercial website as a "service" of a place of public accommodation); *Nat'l Fed'n Of The Blind v. Target Corp*., 452 F. Supp. 946, 953 (N.D. Cal. 2006)(same). Because a hotel's reservation  website system is a "service", all that is required is that a disabled person be deprived of full and equal enjoyment of this "service".[2]

Alternatively,42 U.S.C. Section 12182(b)(2)(A) expressly provides that "discrimination" includes a violation of 42 U.S.C. Section 12182(b)(2)(A)(ii). Because a non-compliant ORS violates this latter subsection, it is therefore "discrimination" and thus actionable to "any person" who encounters it.

---

[2]An online reservations system may also be characterized as a  privilege or advantage, also referenced in Subsection 12182(a).

The rules of statutory construction mandate a finding that a physical nexus requirement can NOT be imposed because any language expressing this requirement is conspicuously missing from the above cited Regulation and Statutory subsections. As set forth in the following cases, the imposition of substantially similar requirements have been extensively considered and rejected because they were noted to be present in other statutes or subsections, but absent from the applicable sections or subsections governing the claims before the courts reviewing them.

In *Marod.*, 733 F.3d 1323, the Eleventh Circuit held that a disabled tester has standing to pursue a Title III ADA case for violations of 42 U.S.C. Section 12182. Generally, it held that a plaintiff's motive and intent are entirely irrelevant and that there is no requirement that they be a client or customer or a bona fide customer. In this regard, the Eleventh Circuit relied on Supreme Court cases and applied the rules of statutory construction. Both *Marod*, 733 F.3d at 1333, and *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001), held that an ADA plaintiff suing under 42 U.S.C. Section 12182(a) does not have to be a "client or customer" of the defendant. In both cases, the Eleventh Circuit and Supreme Court noted that a **different** subsection of the same statute contained a "client or customer" requirement that was not present in the plain language of Subsection 12182(a). Therefore, both courts held, the requirement could not be applied. Because the "client or customer" language was present in one subsection, but missing from the subsection that governed, the requirement could not be imposed. In *PGA Tour*, 532 U.S. at 678-79, the defendant had argued that the plaintiff had no standing to sue unless he was a "client or customer" of the place of public accommodation. The Court rejected this notion. As the Court observed, the Statute's "client or customer" limitation was set forth in only one Subsection of the Statute, but missing from others that governed the case before it. Specifically, Section

13

12182(b)(1)(A)(iv) contained the "clients or customers" limitation. However, the Subsection at

issue in *PGA Tour*, namely 12182(a)[3] **did NOT** contain this limiting language. Therefore, the

Court stated that: "clause (iv) is not literally applicable to Title III's general rule prohibiting

discrimination against disabled individuals. Title III's broad general rule contains no express

"clients or customers" limitation..." *PGA Tour*, 532 U.S. at 679 (citing Subsection 12182(a)).

Therefore, as the Supreme Court observed, limiting language contained in one Subsection of

Title III cannot be applied to other Subsections of the same statute where that language is

missing.

In *Marod*, the Eleventh Circuit considered other cases applying other civil rights statutes.

Among these was *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), discussed by the

*Marod* Court at 733 F.3d at 1330. As noted by *Marod* regarding *Havens*:

> The Supreme Court concluded that a black tester who was misinformed about the
> availability of a rental property had alleged sufficient injury-in-fact to support standing to
> sue under § 804(d) of the FHA. Id. at 374, 102 S. Ct. at 1121-22. The plaintiff-tester in
> Havens Realty never intended to rent the apartment; rather, his sole purpose was to
> determine whether the defendant engaged in unlawful practices. *Id*.
>      In considering the tester's standing, the Supreme Court in *Havens Realty* explained
> that the "'the actual or threatened injury required by Art. III may exist solely by virtue of
> statutes creating legal rights, the invasion of which creates standing." *Id. at 373 []*; see also
> *Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3, [](1973)* ("Congress may enact statutes
> creating legal rights, the invasion of which creates standing, even though no injury would
> exist without the statute."). The statutory language of the relevant FHA provision, § 804(d),
> was therefore critical to the Supreme Court's decision. *Havens Realty, 455 U.S. at 373, []*.

*Marod*, 733 F.3d at 1330 (additional citations omitted). The Court also noted:

> The Supreme Court therefore concluded that § 804(d) "establishes an enforceable right to
> **truthful information** concerning the availability of housing" and "[a] tester who has
> been the object of a misrepresentation made unlawful under § 804(d) has suffered injury
> in precisely the form the statute was intended to guard against, and therefore has standing

---

[3]Subsection 12182(a) is the same Subsection that governs the instant action.

to maintain a claim for damages under the Act's provisions." [Citation omitted.]

        The Supreme Court admonished "[t]hat the tester may have approached the real estate agent fully expecting that he would receive false information, and **without any intention of buying or renting a home**, does not negate the simple fact of injury within the meaning of § 804(d)." *Id. at 374*; *[].*The Supreme Court explained that "[w]hereas Congress, in prohibiting discriminatory refusals to sell or rent in § 804(a) of the Act, *42 U.S.C. § 3604(a)*, required that there be a 'bona fide offer' to rent or purchase, Congress plainly omitted any such requirement insofar as it banned discriminatory representations in § 804(d)." *Havens Realty*, 455 U.S. at 374[]..

*Marod*, 733 F.3d at 1330-31 (emphasis added)(additional citations omitted).

        The case at bar is substantially similar to *Havens Realty*. Under *Havens Realty*, the plain language of the statute gave a right of action to a civil rights tester who encountered **discriminatory information** about an apartment **even though they did not intend to rent the apartment**. In other words, it was not necessary that the person intended to rent or visit the physical location. Rather, encountering the discriminatory information was sufficient.

        In *Marod*, the Court also noted that other anti-discrimination statutes required that a plaintiff have "bona fide" status. *Marod*, 733 F.3d at 1333. Because the bona fide requirement was contained in other statutes, but not included in the applicable provisions of 42 U.S.C. 12182, its requirement could not be imposed. *Id*.  In *Havens Realty*, the Supreme Court applied the same rule of statutory construction, noting that a requirement that a plaintiff be a "bona fide patron" was included in one subsection of the applicable statute, but missing from the subsection that applied to the case before it. Therefore, the bona fide requirement did not apply. *Havens Realty*, 455 U.S. at 374. In *Marod*, the Court stated:

       These examples illustrate that Congress has said so expressly when it wants to limit the class of people protected by anti-discrimination statutes to only clients or customers or to people of bona fide status. But Congress expressed no such limitation in the parts of Title III that are relevant to Plaintiff[]'s lawsuit. This absence of legislative language restricts our interpretation, as we are "not allowed to add or subtract words from a statute."

733 F.3d at 1333-34.  The ability or inability to obtain information in violation of a statute was recognized as an actionable injury by the Supreme Court in *Federal Election Commission v. Akins*, 524 U.S. 11, 20-25 (1998), which ruled that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III. In this regard the Supreme Court stated:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute. *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, [] (1989) (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

524 U.S. at 21.  To the extent there is any room for doubt, there is in fact **another** subsection of the Statute which **DOES** contain language imposing a physical nexus requirement. 42 U.S.C. Section 12182(b)(2)(A)(i) prohibits:

> "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities ***from*** fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations..." (Emphasis added.)

In that Subsection, the word "from" is critical because its insertion in the Subsection means that a disabled person's encounter with discriminatory eligibility criteria by itself does not give rise to a cause of action unless and until that criteria prevents them **"from"** full and equal access to goods or services. This word, however, is conspicuously absent from any of the provisions that govern online reservations systems.  Because an ORS is a "service" of the place of public accommodation, and failure to comply with the Regulation qualifies as "discrimination", then nothing more is necessary. When a disabled person encounters a non-compliant ORS, he has been "discriminated against on the basis of disability in the full and equal

16

enjoyment of  ... services, ..., privileges, advantages..."  Alternatively, he is "any person subjected to discrimination" within the meaning of Sections 12188(a) and 12182(b)(2)(A).   Thus, the plaintiff has standing and there is no additional requirement that they actually visit the hotel or intend to book a room. In short, the Plaintiff's encounter with the discriminatory website IS the injury.

Although not an ADA case, the Supreme Court's decision in *Bates v. United States*, 522 U.S. 23, 29 (1997) is helpful because the Court held that the element or requirement of intent could not be judicially added to a statute if it was not there in the first place, particularly where this requirement could be found in a different section.

The Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) supports Plaintiff's arguments. In *Spokeo*, the Supreme Court held that improper information which violated the Fair Credit Reporting Act did not, by itself, constitute injury.  However, the *Spokeo* Court specifically recognized the existence of statutes which provide that the dissemination of improper information constitutes an injury with nothing more required. The Court stated:

> Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, [] (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, [] (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Spokeo,* 136 S.Ct. At 1549-50.  In the *Akins* decision referenced by *Spokeo*, the Supreme Court,

in turn, referenced *Havens Realty* as follows:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publically disclosed pursuant to a statute..... See also *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374[] (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).

*Akins*, 524 U.S. at 21. Thus, the *Spokeo* Court neither overturned nor narrowed *Havens Realty*, but instead acknowledged the body of law to which *Havens Realty* belongs.[4] Indeed, the concurring and dissenting opinions in *Spokeo* both expressly recognized *Havens Realty*. *Spokeo*, 136 S.Ct. at 1553, 1555 (Thomas J., Concurring)(Ginsburg, J. Dissenting).

Many authorities in this Circuit have cited *Havens Realty* in recognizing informational injury. "Being lied to in violation of an anti-trickery statute like the FDCPA is a concrete harm nevertheless." *Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 739-40 (N.D. Ill. 2017)("*Havens Realty* turns only on the misleading nature of the representations, not on the racial motivation behind them"); See also *Bensman v. United States Forest Serv.*, 408 F.3d 945, 955-57 (7th Cir. 2005)(surveying cases and statutes where informational injury is recognized and actionable). As *Bensman* illustrates, where a statute requires that a protected person receive certain information, failure to provide that information is actionable. In *Village of Bellwood v. Dwivedi*, 895 F.2d 1521 (7th Cir. 1990), the Seventh Circuit followed *Havens Realty* in recognizing the standing of testers to sue over false statements regarding housing. See also *Kyles v. J.K. Guardian Sec. Servs.*, 222 F.3d 289 (7th Cri. 2000). In *United States v. Balistrieri*, 981 F.2d 916, 929 (7th Cir. 1992), black testers who were given false information regarding housing

---

[4]In *Marod*, passim, this Circuit Court found substantial similarities between the ADA and the statute at issue in *Havens Realty* with regard to the issue of standing and the lack of any motive requirement of the individual plaintiff.

had standing to sue even though they had no intention of renting. See also *Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086, 1096 (7th Cir. 1992).

Testers have standing under Title III of the ADA. See  *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014), citing *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1333-34 (11th Cir. 2013). As such, the disabled person's motive is entirely irrelevant because all that matters is whether they encountered discrimination as defined by plain words the Statute.  *Marod*, *passim*.

Courts have widely recognized the public policy served by plaintiffs acting as "private attorneys general" in enforcing the provisions of the ADA. *See  Hensley v. Eckerhart*, 461 U.S. 424, 445(1983) ("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."); *Bruce v. City of Gainesville*, 177 F.3d 949, 952 (11th Cir. 1999); *Mallory v. Harkness*, 923 F.Supp 1546, 1551 (S.D. Fla. 1996) ("Congress intended Section 1988 to prompt plaintiffs to act as citizen enforcers or private attorneys general advancing our nation civil rights objectives and vindicating the liberty of all citizens.").  "Civil rights law depends heavily on private enforcement. Moreover, the inclusion of  penalties and damages is the driving force that facilitates voluntary compliance with the ADA." *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1082 (D. Hawaii 2000). Courts have noted: "As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled. For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be

19

compliant with the ADA." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007); *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008). See also *Harry MackLowe Real Estate Co.*, 6 F.3d at 904 (acknowledging testers right to enforce private attorney general statute).

The result of a private attorney general statute such as the ADA is that "[i]t is not unprecedented in this country for advocacy groups and individual members of advocacy groups to find it necessary to file a long trail of lawsuits in federal courts to enforce legal and civil rights." *Marod*, 733 F.3d at 1326.

Some courts have held that status a tester "plausibly increases the likelihood that she will visit the [defendant's] website again to test its ADA compliance." *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019), citing  *Gold Sun Hospitality, LLC*, No. 8:18-cv-842-T-33CPT, DE 23, pp. 31-32. See also *Access 4 All, Inc. v. Absecon Hospitality Corp.*, 2006 WL 3109966, *17 (D.N.J. 2006). *Marod*, 733 F.3d at 1336 (explaining that plaintiff's status as a tester indicated that he would revisit the property many times and therefore tended to show a real and immediate threat of future injury).

Moreover, because Plaintiff has a reliable system of rechecking and revisiting the subject websites, she has standing. *Parks*, 2020 U.S. Dist. Lexis 86790, at *7. Thus, Plaintiff's intent to return is distinguishable from *Lujan*'s "some day" reference. Plaintiff has a system of rechecking the ORS of every hotel she sues within a month of filing her lawsuit, then again once the hotel's ORS is required to become compliant.

## VI.     The Proximity Test Is Irrelevant

The Second Circuit in *Harty* referenced the four part test regarding standing: (1) the

distance from the property to plaintiff's residence; (2) the plaintiff's frequency of travel to the area of the defendant's physical property; (3) the specificity of plaintiff's intent to return; and (4) plaintiff's ties to the area surrounding defendant's physical property. (Hereinafter "Proximity Test".) However, this test is not applicable to website discrimination. For example, in *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. Lexis 209202, *30 (S.D.N.Y. 2019), one court rejected the notion that the plaintiff's possible visit to the subject property was at issue, holding:

> Plaintiff has claimed that he was denied access to the Website, not Defendant's physical location itself. Thus, Defendant need not have shown that he intended to "return" to Defendant's school in Nashville, Tennessee. He is only required to have established a reasonable inference that he intended to return to the Website...

In addition to *Camacho*, many courts have held the Proximity Test  was less applicable (or completely inapplicable) to ORS cases. For example, in  *Parks,* 2020 U.S. Dist. Lexis 86790 at *6, the court ruled that the long distance between the hotel and the plaintiff's home weighed in the plaintiff's favor because hotels cater to travelers from afar.[5]  Numerous other courts have criticized the Proximity Test's applicability to hotels and website discrimination cases. *Gold Sun Hospitality, LLC*, 8:18-cv-842, DE 23, pp. 30-31;  *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019).  Another court has held that the Proximity test not applicable to commercial websites (in vision impaired discrimination) because (1) website cases do not involve physical locations; and (2) no travel is required. *Gniewkowski, et al v. Lettuce Entertain*

---

[5]Numerous other courts have held that the proximity test is not applicable in the context of hotels because hotels are, by nature, established to accommodate travelers from afar. *Bodley v. Plaza Management Corp*., 550 F.Supp.2d 1085, (D. Ariz. 2008);  *D'Lil v. Best Western Encina Lodge & Suites*, 415 F. Supp.2d 1048, 1056 (C.D. Cal. 2006); *Access 4 All, Inc. V. Wintergreen Commercial P'ship*, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005); .  *Access 4 All, Inc. v. 539 Absecon Blvd*., 2006 WL 1804578, at *3 (D.N.J. 2006).  Indeed, at least one court has ruled that a plaintiff who lives ***too close*** to a hotel has no standing to sue for compliance. See *Access 4 All, Inc. v. Thirty East 30th Street, LLC*, 1:04-Civ-3683, DE 36, at 17 (S.D. N.Y. 12/11/06).

*You Enterprises, Inc., et al.*, 251 F. Supp.3d 908, 920 (W.D. Pa. 2017). "The relevant 'future injury' inquiry relates to the [hotel's] website and reservation system, rather than the [hotel's] physical property. *Sai Ram*, 2019 U.S. Dist. Lexis 80111, at *11.

**VII.    Plaintiff Does Intend To Visit Wisconsin**

Even though such is not necessary for purposes of standing, Plaintiff does indeed intend to visit Illinois and travel throughout the entire State as soon as the Covid crisis abates. Laufer Affid., para. 5. She will stay in area hotels during her travels. Because this Defendant and so many others fail to comply with the law, Plaintiff lacks the information she requires to make a meaningful choice. *Id.*

**VIII.   Conclusion**

For the foregoing reasons, Plaintiff has standing.

Respectfully submitted,

By:    */s/Tristan W. Gillespie*
       */s/Thomas B. Bacon*
       Tristan W. Gillespie and
       Thomas B. Bacon,
       Thomas B. Bacon, P.A.
       644 N. McDonald Street
       Mount Dora, FL 32757
       tbb@thomasbaconlaw.com
       954-478-7811